MARY HELEN UHLICH, ADMINISTRATRIX, APPELLEE, V. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, APPELLANT.

FILED APRIL 23, 1910. No. 16,013.

Appeal: CONFLICTING EVIDENCE: AFFIRMANCE. Where the sole question involved is one of fact upon conflicting evidence, and there is sufficient to sustain the verdict, the judgment will be affirmed.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*James E. Kelby, Halleck F. Rose, Frank E. Bishop* and *Byron Clark,* for appellant.

*George W. Berge, contra.*

REESE, C. J.

This action was commenced in the district court for Lancaster county by plaintiff, as the administratrix of the estate of August Uhlich, deceased, against the defendant for damages resulting from the death of said August Uhlich caused by the alleged negligence of defendant. Briefly stated, it is alleged that deceased was in the employ of defendant as general foreman in its repair shops in its track yards in the city of Lincoln, and in which serv-

ice he had been engaged for a number of years; that upon the completion of his day's work on the 2d day of March, 1906, he started to leave the yards, crossing defendant's tracks, when, without any negligence or want of care on his part, he was negligently run over and killed by one of defendant's engines which was being operated at a dangerous rate of speed without warning, lights, bell or whistle. The names of the surviving widow and children of deceased are given, and damages in the sum of $5,000 for loss of means of support are asked, with prayer for judgment following in the usual form. Defendant filed its amended answer, admitting the death of deceased by accident on or about the date named in the petition, but alleging contributory negligence on his part, the assumption of the risk by him in his employment, and a denial of any fault or negligence on the part of defendant. It is further alleged that in the year 1889 defendant and its employees organized an association known as the "Burlington Voluntary Relief Department" of defendant, by which those who became members agreed upon the amount to be paid in case of sickness, accident, or death; that the deceased became, and continued to the time of his death, a member thereof, designating his wife, plaintiff herein, as the beneficiary of his contract of membership; and that it was provided in said contract that the receipt by the beneficiary of the amount thereby agreed to be paid should work a release of the defendant from all other claims and demands based upon the sickness, injury, or death of the member. The provisions of the contract are fully set out in the answer, but need not be here restated. It is further alleged that, subsequent to the death of said Uhlich, the plaintiff herein brought suit upon the certificate of membership, and recovered judgment and accepted and received the sum of $600, the full amount due thereon, and which, by the terms of said certificate and membership, was a full and complete satisfaction of all claims arising from said death, and a bar to the prosecution of this action. A general denial of all unadmitted facts was entered, with

prayer for judgment for costs. The amended reply contained a general denial of the unadmitted facts pleaded in the amended answer, admitted the recovery in plaintiff's individual capacity of the amount due her from the said "Burlington Voluntary Relief Department," but alleged that the receipt thereof did not relieve defendant from the results of its own negligence, that in any event the children of deceased could not be prejudiced thereby, and the action of plaintiff in her individual capacity could not bar the rights of said children. A jury trial was had which resulted in the return of a verdict in favor of plaintiff for $2,000, for which amount judgment was entered. A motion for a new trial was filed and overruled. Defendant appeals.

The family of deceased consisted of his wife (plaintiff) and five children, making in all six members. In the instruction to the jury the court directed that if, under the evidence and instructions, the finding was in favor of plaintiff the jury should ascertain the amount of damages proved, deduct one-sixth therefrom, and return a verdict for the remainder. In view of the pleadings and evidence, it is assumed that the directed deduction of one-sixth from the amount agreed upon by the jury was for the purpose of depriving plaintiff of any part or share in the verdict or judgment, owing to the fact of her having collected the amount due on the certificate of membership in the relief association. The instruction gives us no light upon this point. Such, however, was stated upon the argument to be the fact, and, as neither party has referred to the subject in the printed briefs, we accept it as the theory upon which the case was tried, viz., that the widow was to receive no consideration in arriving at the amount of the verdict. The evidence, while voluminous, is not as satisfying on some features of the case as might be desired. There was evidence tending to prove that deceased had been engaged in the service in which he was employed at the time of his death for over 20 years; that it was the known custom of the many employees within the track

yards to leave their work at the end of a day's service, and cross the tracks to and in the direction of their homes, and at or near the point where deceased lost his life there was a beaten track or pathway along which many followed; that between 5 and 6 o'clock P. M. of the day on which the accident occurred, the evening being cold, with a high north wind and snow falling, deceased put on his overcoat, turned up the collar, put on his cap, turning down the ear protectors, and started for his home, in a general way following the usual traveled route; that soon thereafter he was seen for an instant as he passed under an engine, and his mangled remains were left upon the track after the engine had passed over him. No one witnessed the accident. There is no proof as to just how it occurred, and, unless seeking to cross the track in front of the engine, if he did so try, and unless the wearing of his collar and cap, as above stated, were, or might be thought to be, acts of negligence, there was perhaps no act of his that might suggest a want of care upon his part. Upon this phase of the case the court instructed the jury, in substance, that, where there were no eyewitnesses to the accident, "the law, because the natural instincts and habits of the ordinary person will ordinarily cause him to preserve himself from danger, will presume that at the time he was exercising due care and caution, and was not negligent. This is a presumption of fact only, and prevails only in so far as the facts and circumstances of the case do not show to the contrary." The evidence as to the manner in which deceased wore his coat collar and cap was also submitted with proper instructions. The question of the negligence of the deceased, under all the facts and circumstances proved, was one for the jury.

It was claimed upon the trial that it was the duty of defendant to maintain a guard or flagman at the place where employees were in the habit of crossing the tracks in leaving the yards at the close of the day's service; that the engine was being run at a dangerous rate of speed at the time of the accident; that there was no headlight burning

upon the engine; that no bell was rung nor whistle sounded to warn those crossing the track of the approaching engine; and that those facts might properly be considered by the jury in arriving at a solution of the question of the want of care on the part of defendant, but the court, by its instructions, withdrew all those matters from the consideration of the jury, except as to whether the bell was rung. Of these instructions it is apparent defendant had no cause for complaint. There was a conflict of evidence as to the condition of the engine bell at and before the time of the killing of deceased. The bell was so constructed as to be revolved upon its axis by the use of compressed air. There was evidence tending to prove that the appliances for ringing were not at all times reliable, and that the bell would cease its revolutions at unexpected times, and at other times it would revolve around upon its axis with such speed as to prevent any sound being made. Upon this part of the case there was a sharp conflict in the evidence, not so much as to the condition of the appliances, as to the effect of the revolutions of the bell. There was some evidence tending to show that the bell was being rung as the engine was passing through the yards, running at a speed from five to ten miles an hour, while, upon the other hand, it was claimed by witnesses that the bell did not ring and could not be depended upon to ring at all, and that the appliances for ringing had been in their defective condition for some considerable time before the accident, and had so continued until the following day, when it was inspected. This condition it was claimed was fully known to the agents and employees of defendant having it in charge. While the evidence upon this point was conflicting, yet there was sufficient to support a finding of the jury either way. Upon this feature of the case the court gave the following instruction: "It follows from the law which I have given you that the sole charge of negligence upon the part of defendant made by the plaintiff to which you should direct your attention is the one wherein the plaintiff charges that the defendant negligently failed to have the

bell ringing upon the engine at the time it ran over the deceased. If you find that the defendant was negligent in this particular, and that as a proximate result of such negligence Mr. Uhlich was run over by the engine, then you should direct your attention as to whether or not Mr. Uhlich was at the time guilty of contributory negligence upon his part, about which you are hereinafter instructed, the burden of proof being upon the plaintiff to prove by a preponderance of the evidence that at the time of the accident the bell upon the engine was not ringing; that the defendant was guilty of negligence in its failure to have the said bell ringing at the time; that as a proximate result of such negligence Mr. Uhlich was killed; that plaintiff has sustained injury by reason of his death, as alleged in the petition, and the amount of damages sustained thereby, when the plaintiff has shown these facts, she would be entitled to recover at your hands, unless the evidence also shows that Mr. Uhlich, deceased, was guilty of contributory negligence upon his part, such negligence being also a proximate cause of the injury received; the burden of the proof being upon defendant to prove by a preponderance of evidence that the said Uhlich was guilty of such contributory negligence. If, however, the plaintiff's own testimony should show such negligence upon the part of Uhlich, then no burden would be upon the defendant to prove the same." We are unable to discover wherein this instruction did not submit the question involved to the jury in as favorable a light as defendant was entitled to, and the verdict thereon will have to be accepted as final.

We have read all the instructions with care, and are persuaded that every right of defendant was carefully protected and guarded, and that there is no ground for contention on its part that the instructions, as a whole, were not, at least, fair. We are unable to find anything in the record of the evidence by which we can say that, as a matter of law, the deceased was, or was not, guilty of contribu-

tory negligence, or that, as a matter of law, defendant was, or was not, guilty of negligence. The whole question was therefore left to the decision of the jury, where it belonged.

The briefs presented by the parties cover an able and exhaustive collation of authorities upon the questions of law contended for, but, as we view the case, the verdict of the jury necessarily depended upon their conclusion as to the weight of the evidence submitted. There is no contention that the court erred, as against defendant, by any instruction given, nor in the refusal to give any instruction asked for by it.

We are unable to detect any prejudicial error which requires a reversal of the judgment of the district court. It is therefore

AFFIRMED.